In re David A. **CRABTREE**, also known as West Knoxville Investment Company, Inc. Debtor.

D. Broward **CRAIG**, Trustee of David A. Crabtree, also known as West Knoxville Investment Company, Inc., Plaintiff,

v.

**ALCHEMIST INVESTMENT CORPORATION**; Beachside II Associates, Ltd.; and Sea Palms Beach Club Associates, Ltd., Defendants.

Bankruptcy No. 3–83–01116.

Adv. No. 3–85–1209.

United States Bankruptcy Court, E.D. Tennessee.

Dec. 17, 1986.

See also, Bkrtcy., 60 B.R. 147.

Cadwalader, Wickersham & Taft, E. Charles Rowan, Jr., Washington, D.C., Walker & Walker, P.C., John A. Walker, Jr., Knoxville, Tenn., for plaintiff.

McNair Law Firm, P.C., Robert E. Stepp, Columbia, S.C., for defendants.

CLIVE W. BARE, Bankruptcy Judge.

Plaintiff, D. Broward Craig, Trustee ("Trustee"), seeks to recover from the defendants Alchemist Investment Corporation ("Alchemist"), Beachside II Associates, Ltd. ("Beachside"), and Sea Palms Beach Club Associates, Ltd. ("Sea Palms") repayment of five purported loans made by West Knoxville Investment Company, Inc. ("West Knox") as follows:

| Date | Transferee | Amount |
| --- | --- | --- |
| September 19, 1982 | Alchemist | $127,000.00 |
| September 22, 1982 | Alchemist | $100,000.00 |
| January 20, 1983 | Alchemist | $150,000.00 |
| September 6, 1982 | Beachside | $125,000.00 |
| September 6, 1982 | Sea Palms | $125,000.00 |

Defendant Alchemist asserts that the "transfer of funds" to it were not "loans," but, even if they were, they have been repaid. Defendants Beachside and Sea Palms assert that the transfers were not loans but capital contributions. Trial was held August 21, 1986.

This court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b). At the trial in this cause the parties stipulated to the entry of a final judgment by the Bankruptcy Court. 28 U.S.C. § 157(c)(2).

I

David A. Crabtree ("Crabtree") testified that in 1982 he was Chairman and Chief Executive Officer of Alchemist. He owned 50% of the stock; E.R. Ginn, III, ("Ginn") owned the remaining 50%. Alchemist was engaged in various real estate projects in the South. Crabtree and Ginn participated in all investments and borrowings. They jointly made all decisions. Some of Alchemist's books and records were kept in Hilton Head (Ginn's headquarters), but the majority were kept in Crabtree's office in Knoxville, computer generated records—balance sheets, income statements, and statements of notes payable. Ginn was regularly furnished copies of all records.

In March 1983, Crabtree sold his stock in Alchemist to Ginn. Crabtree also resigned his position as a corporate officer.

West Knox Investment Company was owned by Crabtree. It was engaged primarily in working out problem real estate loans for the Butcher banking empire. Linda Bridges was authorized to sign checks on West Knox's bank accounts.

According to Crabtree, West Knox regularly loaned funds to Alchemist for working capital.

"... West Knox regularly loaned Alchemist funds; it was not unusual, and every once in a while we would document the files, draft promissory notes evidencing the indebtedness between the companies and whatever."

"[W]e regularly loaned monies back and forth between the companies, and when one company was flushed [sic], you know, we loaned to another and would settle up when the other company got some funds."

.　　.　　.　　.　　.

"[R]egularly, the companies would execute notes between each other for the amounts due from one company to another; it was not uncommon, and as I stated, I gave the trustee a series of notes that existed at the end of '82 representing the debts between those companies. I don't know where they're at—or I think I did."

Crabtree deposition, April 9, 1986, pp. 13, 19, and 20.

Crabtree identified copies of three checks totaling $377,000.00 dated September 19, 1982; September 22, 1982; and January 20, 1983, drawn on West Knox's bank account and payable to Alchemist, as inter-company loans. "The only reason there would be a check between one company and another would be inter-company loan and repayment of loans." Crabtree deposition, April 9, 1986, p. 20.

According to Crabtree, the loans in question were not repaid.

Beachside II was a corporation which was a general partner of Beachside II, Limited. Ginn controlled Beachside II, Inc., the general partner. Sea Palms Beach Club Associates, Limited was a similar entity, also controlled by Ginn. Ginn syndicated the corporate entities through the sales of limited partnerships. Crabtree bought a 45% interest in the limited partnership in Sea Palms for $1,000,000.00 cash, and a 45% interest in Beachside for $1,400,000.00 cash.

Crabtree testified that West Knox's September 6, 1982, transfers of $125,000.00 to Sea Palms and Beachside were loans for interim operating funds. According to Crabtree, Beachside II went through some hard times initially obtaining the necessary funds to get the development underway. Crabtree agreed to assist in financing.

The decision to borrow funds from West Knox was made by Crabtree and Ginn. The situation with Sea Palms was identical.

II

Defendants assert three defenses:

(1) The trustee has not carried his burden of proving that the proceeds of the checks payable to Sea Palms and Beachside II were received by any of the defendants in this action;

(2) The trustee has not carried his burden of proving that the transactions involving Alchemist represent unpaid loans; and

(3) Even if the checks payable to Alchemist are deemed to be loans, those loans have been repaid or there are corresponding obligations from West Knox.

Mr. Ginn testified that he is a real estate developer. Each of the defendants in this case, Alchemist, Beachside II, and Sea Palms are among his real estate development projects. There were some projects that had significant financing from Butcher banks. Crabtree generally dealt with the lenders in Tennessee. Ginn did not always know where the financing that Crabtree had arranged was coming from. Ginn maintained the books and records for Sea Palms and Beachside at his headquarters at Hilton Head. Crabtree maintained the financial books and records of Alchemist at Knoxville.

In the middle of 1982, the Ginn projects financed through the Butcher-related Banks and through Ginn's connections with Crabtree started to run into cash-flow problems. In response to plaintiff's question that it wasn't uncommon for West Knox to step in when cash flow got a little tight and make interim loans to companies financed in Tennessee through Butcher banks, Ginn responded:

"I have to testify to that that I do not know where all of the funds came from. I do not know of any direct loans made from West Knox to Alchemist. I mean, Crabtree had a—he had his own sandbox up there. He had both sides of it, and he moved money around. And I can't sit

here today and testify—I'm not aware of any notes between Alchemist and West Knox Investment Corporation, no."

Trial Transcript at 12.

With reference to the $125,000.00 transfers to Sea Palms and Beachside, Ginn "thinks" these payments were for Crabtree's acquisition of the limited partnership interests. According to Ginn, he didn't take all of the purchase price at the closing but drew the million and the million four down whenever he needed cash.

Q. Did there come a time in August or September of 1982 when you drew from Mr. Crabtree any payments for his acquisition of the limited partnership interest in those projects?

A. I *think* that was concluded, and I *think* we were about ready to start construction at that point in time. (Underscoring added.)

Trial Transcript at 23.

### III

Crabtree's testimony and copies of the three checks ($127,000.00, $100,000.00 and $150,000.00) conclusively establish the loans of these sums by West Knox to Alchemist. Further, attached to Alchemist's interrogatory answers are bank statements showing deposits in the exact amounts of the three checks: $127,000.00, $100,000.00 and $150,000.00. The dates of the $127,000.00 and $150,000.00 deposits—September 20, 1982, and January 20, 1983—correspond precisely with the dates of the checks. The statements also show a deposit of $100,000.00 on December 27, 1982. The $127,000.00 and $150,000.00 checks plainly bear Alchemist's endorsement. The $100,000.00 check is a poorer copy and the endorsement is not legible, but the payment of the drawee, C & C Bank, is apparent. The drawee's payment stamp conclusively establishes that the check was negotiated.

Ginn concedes that he did not know where all of Alchemist's funds came from. According to Ginn, Crabtree had his own "sandbox" and moved money around. The proof discloses that he moved $377,000.00 from West Knox to Alchemist.

It is true that the trustee has failed to produce notes reflecting the loans. Crabtree believes that notes were executed and that the notes were turned over to the trustee, or he "thinks" they were. Crabtree concedes, however, that some records were discarded or thrown away in the spring of 1983. Although the notes have not surfaced, other documents and Crabtree's testimony are sufficient.

Ginn asserts that even if the evidence establishes that the checks represent loans, the proof also establishes that Alchemist has repaid its loans to West Knox. Alchemist offered into evidence two unexplained checks of $200,000.00 and $250,000.00. These checks, drawn on Alchemist's account, signed by Crabtree and payable to West Knox are dated August 26, 1982, and November 3, 1982, respectively. Alchemist offered no evidence that the checks constituted repayment of the three loans from West Knox.

The $200,000.00 check can be readily addressed. That check predates all three of the West Knox checks. Obviously this check could not have been a repayment of any of the loans the trustee is seeking to enforce in this action.

The $250,000.00 check presents more serious problems. On November 3, 1982, when that check was issued, West Knox had made two loans to Alchemist totaling $227,000.00. The trustee argues that the check bears no relation to the two loans which preceded it. He points out that to conclude that the November 3 payment of $250,000.00 was repayment of $227,000.00 in loans, one would have to conclude that the lender charged the borrower 82% interest. The trustee also argues that payment of a debt is an affirmative defense, that the burden of proving payment is upon the party alleging payment. Although not pleaded by the defendant, the defense of payment was tried by implied consent of the plaintiff. The trustee concedes that this is a case where

there is not an overwhelming amount of evidence on either side.

The $250,000.00 check is silent as to the purpose for which it was drawn. It was deposited, however, to West Knox's account on November 4, 1982. Neither the testimony of Mr. Ginn or Mr. Crabtree is helpful. The court must therefore reach a decision solely on the basis of the check. The check clearly establishes a transfer of funds from Alchemist to West Knox. The court therefore concludes that Alchemist is entitled to a setoff for the amount of the transfer.

Judgment will be entered in favor of the trustee and against Alchemist in the sum of $127,000.00.

### IV

■ The trustee has established that West Knox's August 6, 1982, payments to Sea Palms and Beachside were loans of interim operating funds. Seaside and Beachside concede that the checks "[o]bviously ... show transfers of funding...." Final Argument Transcript at 12.

Ginn's testimony that in August or September 1982, Sea Palms and Beachside drew from Crabtree some portion of Crabtree's capital commitment to those limited partnerships is not persuasive. Further, the argument of Sea Palms and Beachside is unsupported by documentary evidence which Ginn could have produced. Ginn now solely controls the two entities and their financial books and records. Yet neither Beachside nor Sea Palms produced any documentary evidence that capital draws occurred in August or September 1982. When asked by the court concerning the records, Ginn's attorney stated "I'm not going to introduce them. I think that's up to the trustee. The trustee has to prove it." Final Argument at 9.

Crabtree testified without qualification that the transfers from West Side to Sea Palms and Beachside were loans for interim financing. The court so finds. The loans not having been repaid, judgments will be entered in favor of the trustee for the amounts owing.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.